All right, our first case for argument is 23-1078, All One God Faith, Inc. v. United States. Mr. Kirby, please proceed. May it please the Court. Good morning. My name is Kyle Kirby. I'm Kyle J. Kirby, Attorney and Counselor at Law, PC. I represent Ascension Chemicals, LLC, Globe Energy Corporation, UMD Solutions, LLC, and Kudkem Technology, LLC. Collectively, the Consolidated Dependents. Thank you for this oral argument opportunity. Something doesn't smell right concerning this case regarding the lack of jurisdiction over Globe's entries, CBP referring the covered merchandise question to Commerce, and CBP's application of its adverse inference. In the latest case addressing jurisdiction, the Court of Appeals of International Trade in Royal Brush Manufacturing v. U.S. 19-198, Slip-Off 23-177-13, acknowledged that, based on this Court's language in Royal Brush Manufacturing v. U.S. 75-4- Counsel? Yes, ma'am. If you turn to appendix page 19, can you tell me the import of footnote 9 on your argument? Page 19 of the original brief? Appendix page 19. Appendix page 19, sure. Do you have access to the evidence? I do. Okay. What is the import of footnote 9 on your jurisdiction argument? I'm sorry, what is that again? What is the import of footnote 9? Do you see footnote 9? Footnote 9. Yes. What is the import of that footnote on your jurisdiction argument? The import would be xanthan gum. I didn't mean it as a pun. I meant like, what do you think the effect is of footnote 9 on your jurisdictional argument? Well, obviously the CIT determined that it did not have jurisdiction over the entries because they were already liquidated. Yeah, but I think that footnote 9 expressly says that even if we did have jurisdiction, you would still lose. On the merits? That is correct. Okay. But we can't presume jurisdiction if the court has dismissed jurisdiction, can we? No, I guess that's why we're here today. Right. I'm a little baffled by why you didn't file a lawsuit after customs denied your protest against the liquidated entries. Simply put, my client couldn't pay to play. Well, that's what's necessary to perfect jurisdiction. Your other clients did perfect jurisdiction and got a ruling on the merits under C. There's no exception for can't pay for jurisdiction, is there? No, actually there is not. I just – I fail to understand how we have jurisdiction over liquidated entries that became final because you failed to file a lawsuit. And you weren't prevented from doing that. In fact, you started to perfect the process. You filed a protest of the improperly liquidated entries. Customs denied it. If you'd filed a lawsuit, you could have asked for an injunction to suspend them during the course of the C proceedings, right? Actually, we did submit for an injunction. Yes, but the entries were already liquidated. Yeah, that's right. Once they're liquidated, the court can't do anything, can they? Well, I think there's still an open question, right? Did the evasion occur and – or did it occur but at a much lower rate? But it didn't matter. If the court doesn't have jurisdiction because entries have already been liquidated, whether evasion occurred or not is irrelevant because they can't order liquidation when you didn't perfect jurisdiction. Even if there had been a finding of no evasion on the merits order, you'd be out on the liquidated ones, wouldn't you? Well, not – What's the basis? I'm sorry? What would be the basis to order reliquidation? So in the brief, really the reliance would be on the Shin-Ai court. What's the jurisdictional basis in Shin-Ai? Isn't it an I case? I believe it's an A. Okay. And what was the basis for that though? It was that customs liquidated ministerially and there was nothing to protest. Right. So the federal – Here there was something to protest because you did. And customs denied it. Right. And in Shin-Ai, there was no protestable decision or something like that I think. So the federal circuit and CIT president dictate that the CIT's bribe remedial powers include the power to issue refunds on entries and other remedies regardless of the liquidation status. Well, that's not true in the broadest sense of that statement. We've held repeatedly that if an entry is liquidated and becomes final, the court doesn't have jurisdiction under A. There may be narrow exceptions to that, but that's in a case where it was not possible to protest it or otherwise perfect jurisdiction. You clearly could have perfected jurisdiction here because you did for your other clients. That is true. But we also do see the differences between the commerce statute, right, and that of EVA. So commerce allows for a court injunction, right? Section 1517 does not. There's also an implementing regulation that allows customs – Was there not an injunction here with regard to the entries the court got to the maritime? No. Liquidation was suspended. Liquidation was suspended up until the point where before the case was decided or before the administrative piece was decided, customs liquidated the entries. I'm not talking about the ones they found lack of jurisdiction on. I'm talking about the ones there was jurisdiction on. Yes. Those weren't liquidated before the court reached its decision. They were liquidated after the court reached its decision. We filed a protest for those, and the protest was suspended until after the decision. So the liquidation wasn't final? Arguably. Not arguably. If you file a protest and it's suspended, there's no final decision. The final decision is after protest. The statute also – I am just completely confused why some of your clients did the right thing and one of them didn't. Well, they didn't have to pay because customs suspended the protest. Again, it doesn't matter. Just the way it works. If customs liquidates, they liquidate. And then you can get it suspended. You could have gotten it suspended. You agree to that, don't you? We tried, actually. No, you didn't. You didn't file after customs denied the protest in court. So that decision became final. Am I correct in understanding that this jurisdictional question pertains to some of the entries, but there are other entries where there is not a jurisdictional question? Correct. Okay. Would you mind moving on to the covered merchandise?  Because that pertains, I think, to the entries that aren't possibly covered by the jurisdictional question.  Again, something doesn't smell right with C.P. Calico's petitioner in the EIPA allegations. Mostly absent in these proceedings, the same ledger had a 0% rate in the same China Xanthan case. Counsel, do you agree that the merchandise at issue was subject to the anti-dumping order on Xanthan gum at the time of entry? Technically, yes. Are you trying to equivocate in some way? Because you put the word technically in front of that. Well, we believe that customs should have referred the matter to Commerce because there was a question regarding the covered merchandise. But I think the statute, 1517B4A, says that C.P. only has to refer a matter if they're unable to determine whether the merchandise was covered. But here they weren't, doesn't seem like they were unable to. They're not required to refer the matter. It's only if they're unable to make the determination under the statute. And they seem to be able to make it here. So what's your argument about why this is not covered merchandise? And why should they have had to refer something when they were able to make the determination and it's not mandatory? So there's significant evidence that shows a change in circumstances. But that's not something Customs can do. No, that would be on Commerce. If you had an argument to change circumstances, you could have asked Commerce for some kind of redetermination, right? I assume your argument is that there was no longer a domestic industry. And so Commerce should have modified the order to only cover non-petroleum or whatever it is, xanthan gum. Yes. But Customs can't do any of that. And they don't have an obligation to figure out if Commerce needs to do something. That's you. All they have to do is read the order and say this applies to xanthan gum coming from China. But they did have the evidence in front of them. Point me in the statute where it says Customs has a legal duty to refer possible change circumstances to Commerce. That would be in the 1517. I mean, I think B-4 usually covers definite referral. I could be wrong, but I don't see where it makes it mandatory. No, it says that the language is not mandatory. It said they can't file it. Well, if it's not mandatory, then they have no obligation to do it. Under a certain requirement, yes. But they had the evidence in front of them. So what? Plainly. Was there anything that prevented you from initiating a procedure with Commerce saying there is no longer a domestic market, and so this should be amended to exclude petroleum products or whatever? I don't think that has actually been an instance that I could find where an importer actually went and was able to get a change of circumstances. So what? Again, has there ever been an instance where a court has said an importer is not allowed to do this? No, but it hasn't been in front of them. Neither has in Commerce. But the regulation is – The language you're pointing us to doesn't impose any kind of mandate. So that can't save you from Customs determination. If they don't have an obligation, they don't have an obligation. So do you have anything on the actual merits of whether this xanthan gum actually came from China or not? I mean it clearly came from China, right?  Okay. Well, then you're out. The anti-dumping order applies to xanthan gum from China. You have to pay the duties. Until you get a change of circumstance ruling, you have to pay the duties. Okay. Well, you have a minute and a half left, and you're using most of your call time. Would you like to save the remainder? No, I don't. No? You don't want to save the remainder? No, I'll continue. Okay. Yes. You don't want to save any rebuttal time? No. Okay. I don't think we have any more questions. Why don't you sit down and let the government argue, and you can have a minute and a half left to respond. Fair enough. Good morning, Your Honors. I'll start first with the liquidation question. The trial court correctly dismissed Globe's case because there were no unliquidated entries at issue. Congress specifically set forth the statutory Can you clear up for me how this worked with regards to the entries that they actually got to the merits on? Because this is a relatively new statute, so I'm not completely familiar with it. But Customs made the ETHA determination and said these are evasion. Correct. How did they get suspended so that the CIT could hear the merits challenge? The party sought a preliminary injunction for the entries that were not liquidated. The trial court at ECF number 54 filed an order suspending the liquidation during the pendency of the trial court's proceeding. As Your Honor noted earlier, unfortunately, the entries had liquidated for Globe. That liquidation was protested, but there was never an appeal perfected. Those liquidated prior to the trial court in this case issuing the order suspending the liquidation for all of the other entries. If they filed a lawsuit under A, they could have been included in that injunction.  And that's precisely the government's point that the statutory scheme set forth is that for an importer to do that, to take advantage of the protest and appeal jurisdiction under A. In this case. I mean, that's what happens in normal C cases, too, right? They had to dump in countervailing duties. Commerce issues a final order assessing duties or, you know, during the review periods. And any liquidations covered by that are suspended administratively at Commerce. Correct. I think.  And then when Commerce issues a decision, the parties have to seek an injunction from the court to continue it.  It's very materially the same operating liquidation alongside the C cases. So this doesn't fall. I know we have some kind of oddball cases where we've allowed the CIT to take jurisdiction over liquidated entries that were subject to a final decision. This does not fall under that. Those have only ever been permitted under I cases like Chenay or Chenay or Royal Brush. Royal Brush is an outlier, but materially different on the facts than this case. Because in that case, this court permitted jurisdiction to continue for entries that had liquidated with no duties. And so that's separate from this court's line of cases under 1581C, ever since Zenith all the way through SKF and beyond, where this court has held when duties are liquidated with entries, or excuse me, when entries are liquidated with duties such that it becomes final and conclusive, there's no jurisdiction because there's no longer any relief that the trial court can award to someone seeking review at the CIT. And so in Royal Brush, unique circumstance because it's rarely going to be the case where we have entries that have liquidated and litigation proceeds. It was just essentially an oversight from the government and the parties. We didn't realize until it was up to this court. So you think there shouldn't have been jurisdiction in Royal Brush? What is your position on that? That's correct, Your Honor. And in fact, in the remand to the Court of International Trade, Chief Judge Barnett held there was no jurisdiction because there were no active entries and there was no additional relief that the trial court could have awarded to Royal Brush that was not appealed and has now become final. This case, however, is distinct because there were entries that were liquidated with duties. And so this falls under the court's longstanding precedent from Zenith, et cetera. Can you tell me why when Customs found out these entries were improperly liquidated, they didn't just re-suspend them? Sure, Your Honor. Customs is permitted to re-liquidate under Subsection 1501 within a specified time frame of 90 days. That had passed. Essentially, it was a Customs error. But Congress, again, set forth a remedy when Customs makes those errors, and that's the protest and appeal procedure. So it was simply a mistake on Customs' part. But they didn't have any authority to do anything about it because the time period had passed. That was its position, Your Honor. Yes. Right. And so the administrative exhaustion procedures, a protest, final decision, and court case kicked in. Exactly, Your Honor. That was its position. What about footnote 9 here? It seems like a felt-and-suspenders sort of situation, right? Sure. I think, though, Your Honors, that the court has to address the jurisdictional issue. I think that if the court were to disagree with us, the court has to address the jurisdictional issue. Certainly, the CIT had an obligation to address the jurisdictional issue. But why do we? This is not a question of our jurisdiction. We clearly have jurisdiction to review the decision below. And if below, the outcome would be the same regardless of whether we adopted the jurisdictional posture or merits-based posture, why? Are you suggesting to me that law requires me to address the lower tribunal's decision on jurisdiction? I think, Your Honor, quite the opposite, that Your Honors only have to reach the issues that are necessary to resolve, to sustain or remand the case. And here, the trial court did dismiss the case for lack of jurisdiction, and that specific issue is appealed. The appellant doesn't make any argument on the merits for Globe. So I think the issue before, Your Honors, is whether the trial court correctly determined there was jurisdiction. Now, I think Your Honors could probably say it doesn't matter either way because we affirm the evasion determination, and the trial court held that as Globe as well. So you think we can assume there was jurisdiction and then decide on the merits? I thought there was precedent to the contrary that you just can't assume jurisdiction. You have to address the jurisdictional issues first. Yeah, I don't think, Your Honor, and I don't mean to suggest the court should or can assume jurisdiction. But if we're getting to the merits, we have to assume for purposes of argument, even if we would otherwise find differently, that there is jurisdiction and go ahead and form on the merits, I think. That's fair, Your Honors. I think now that we've talked this out, it would be appropriate for the court to address Globe's appeal, and the issue on appeal as it relates to Globe is whether the trial court correctly dismissed its claim for lack of jurisdiction. The court could then go on to say, even if we're incorrect, we sustain the— But I want your answer from you because you're bopping up all around on this. Do we have an obligation to address the jurisdictional issue, or can we affirm, given that they've made no arguments on the merits alternative basis? This court held no jurisdiction, and even if there's jurisdiction, they lose on the merits. They haven't appealed that merits-based determination. So are you telling me as an appellate court that I am bound, I am required to, in the first instance, address the lower court's jurisdiction? I know I'm required to address my own jurisdiction, but I don't understand that I'm required to address the lower court's jurisdiction if there's an alternative basis which hasn't been properly appealed. I think, Your Honors, can only reach the alternative basis if it first addressed the jurisdiction, because you believe as an appellate court I have an obligation to first determine whether a lower tribunal decided properly the question of their own jurisdiction before I can address the merits. I think that's correct, Your Honor. Do you have a case for that? I don't have a case for that. I apologize. And we can, of course, provide supplemental authority to Your Honors later today. But the court, in reaching the merits, does what Judge Hughes has characterized as assumes jurisdiction. And I think in this case, where the trial court correctly held that there was no jurisdiction, there's really no basis, I suppose, to get to the merits without… Well, you're assuming that I can use grounds. That's correct. But jurisdiction is a threshold issue, as Your Honors know. I mean, if we thought the trial court was wrong on jurisdiction, we could say that and then go ahead and affirm on the merits. That's correct, given footnote 9 in the trial court's order. That's correct. I want to briefly touch on a different issue, adverse inferences. Sure. So let's just assume for now that maybe we disagree with this application of adverse inferences. Can you talk me through what, if any, independent support there is in the record to lead to an affirm? Absolutely, Your Honor. And, in fact, the de novo review determination didn't, in fact, rely on adverse inferences. Customs said it would be appropriate to apply the adverse inferences if there's sufficient factual support. That comes in the form of the allegation, the allegation which cited information from the International Trade Commission that says xanthan gum cannot or is not produced in India. It's produced in four countries, but not India. So there is some support that it didn't come from India. Is there really any question any longer? I thought the record was clear. Tell me whether it's disputed, please. Is there any question any longer that what occurred here was that the company sent the xanthan gum from China to India, had it repackaged in India, sent it to the U.S., claimed it was from India, all to avoid the taxation that would otherwise come from China. Is there a question about what I just said? Is that... I don't believe so. Okay, because... Yeah, so they were trying to evade taxation. Precisely. This is really a textbook evasion case. Even the plaintiff's appellants have admitted it actually came from China, where their entry documents said it came from India. And like you said, in India, everyone agrees there are no manufacturing facilities that even make xanthan gum, so they could not have produced it. That's correct. And to Your Honor's question, the alleged manufacturer in India, in fact, said in the appendix 526 to 528, we do not manufacture xanthan gum. The plaintiff's appellants knew that. The stuff that we repackaged comes from China. So that's independent support upon which customs evasion determination... Just out of curiosity, I mean, it seems like a lot of effort to ship the xanthan gum to India and have it repackaged to send it to the U.S. Well, what kind of money are we talking about? Like, ballpark. Just generally, what is the difference between tax rate of xanthan gum coming from India versus if it came from China? It's a 154% duty rate, as opposed to coming from India, where xanthan gum is not produced, zero. So 154% depends on the volume... So more than doubles the cost. 154% would more than double the cost of importing xanthan gum here from China, as opposed to from India. And so that's the purpose for the redirection. Correct. Presumably, Your Honors. Yes. And so I'll just last note on the issue of changed circumstances referral. And I just want to make a distinction here. The changed circumstances referral that plaintiff-appellant is seeking is to the validity of the order. The one that customs has an obligation to refer is whether merchandise falls within the scope. So these are actually completely separate referrals mechanisms. The one, again, that plaintiff-appellants are seeking, there is no authority in the statute 1517 or the regulations that demands, requires, or even suggests that commerce has, excuse me, that customs has an obligation to make this referral. Customs doesn't do anything about domestic market. Correct. They don't have any expertise. Would this go to commerce or would it actually go to ITC? It could go to either, Your Honor, but there is a statute, 19 U.S.C. 1675, that permits parties like plaintiff-appellants to make, to provide information to commerce. And from there, it could be proceeded by either.  Okay. Any further? No, Your Honor. We just respectfully request that the court affirm the trial court. Thank you. Thank you, Counsel. Mr. Kirby, you have some remotal time if you'd like to use that. Thank you. To address, go back to the Royal Brush CAIT. Essentially, they found that there was no live controversy. Here, we disagree that there is no live controversy. Simply put, Globe requested in its complaint that the CIT find that CBP's actions But let me ask you this. If you accept that the liquidation is final and there's no authority to refund those duties, then what's the live controversy? Well, the live controversy is, was there evasion and to what extent? But it doesn't matter because even if the court found evasion, they couldn't order your duties refunded because that's final. If it was ultimately found that it was at a much lower rate, there's nothing preventing customs to go back and change the billing. And I think the government I don't think they're, I mean, I bet customs would cite you a handful of statutes and regulations that say after a final decision is issued, they have no authority to reliquidate. But they could change the billing if it was found that there was no evasion or at a much lower rate. You mean going forward? Correct. So there's an outstanding billing. My client didn't pay. Well, then perfect an appeal on that bill. If that one hasn't been liquidated. No, no, these are liquidated entries. These are the two liquidated entries. You're not going to get anywhere on those liquidated entries. And, you know, if evasion didn't happen, I think the government would take a second look before it launched a case against my client and the CIT to collect. Okay. There's also reputational. Time has expired. I thank both counsel. This case has taken another submission.